**Purnie BISHOP et al., Plaintiffs,**

**v.**

**JELLEFF ASSOCIATES et al., Defendants.**

**Civ. A. No. 2452–71.**

United States District Court, District of Columbia.

March 11, 1974.

Robert J. Wieferich, Washington, D. C., for plaintiffs.

Williams, Connolly & Califano, Washington, D. C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Findings of Fact

JUNE L. GREEN, District Judge.

This is a class action brought by former employees of the defendant Frank R. Jelleff, Inc. who allege that they were terminated from and affected in their employment by unlawful age discrimination of the defendants in violation of 29 U.S.C. § 621 *et seq.*, Age Discrimination in Employment Act. There is also a separate claim for breach of an employment contract by one former employee, John Gonsa.[1]

The class consists of forty individuals who, pursuant to 29 U.S.C. §§ 626(b), 216(b), filed a statutory written consent to join in the action.[2]

The defendants in this action are: Frank R. Jelleff, Inc., a woman's specialty store operation with branches in the Washington Metropolitan Area; Jelleff Associates, a holding company which owns all the stock in Frank R. Jelleff, Inc.; I. Lee Potter, a shareholder in Jelleff Associates and a Trustee of the Jelleff Retirement Trust (hereafter "Trust"); Alan L. Potter, President of Frank R. Jelleff, Inc. and a Trustee of the Trust; Joseph Boyle, Controller of Frank R. Jelleff, Inc. and a Trustee of the Trust; and Eleanor Crunkleton, a Trustee of the Trust.

### Background

Frank R. Jelleff, Inc. (hereinafter "Jelleff's") was acquired by Jelleff Associates in March 1968 from the then principal shareholder, Margaret Gollan Jelleff, the widow of the founder of the store, Frank R. Jelleff. The acquisition involved a complex stock purchase and financing agreement which essentially provided for a substantial down payment and a long term payout.

The financial arrangement, while apparently legitimate, does appear to the Court to be one which contemplates payment of the outstanding debt from the profits of Frank R. Jelleff, Inc. The diversion of profits, normally reinvested or applied to the benefit of the business from which they flow, to the payment of the debt of the purchasers, definitely detracts from the strength of the business. While this Court cannot act as a reviewer of business decisions, it must be aware of all factors which may influence or substantiate a claim of age discrimination.

At the time of the purchase, Jelleff's was operating at a profit although it had experienced a gradual decline in sales since the death of Frank R. Jelleff in 1961. At that time, Jelleff's largest unit was the F Street store located in the downtown business area and its typical customer was the mature woman.

Since the acquisition, Jelleff's has suffered consistent business losses, in part at least, attributable to the massive civil disturbances which occurred in Washington in early April 1968, and to the general decline in downtown retail sales. Due to these losses (Def.Ex.49), Jelleff's eventually closed its downtown store and a branch store (Shirlington) in suburban Virginia. Poor business conditions and excessive payroll expenses (Def.Ex. 50) also resulted in a substantial reduction in the number of employees. In early 1969, Jelleff's employed over 900 employees, which number declined to approximately 237 at the time of this trial in January of 1974.

---

1. The original complaint alleged breach of employment contract on behalf of each member of the class. However, no former employee other than John Gonsa could allege damages in excess of $50,000, the jurisdictional prerequisite to a non-federal claim in this Court. See D.C.Code § 11–501(4) (1973 ed.). Since these claims cannot be aggregated to meet the jurisdictional amount requirements, (*Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973)), the contract claims other than Gonsa's were dismissed on jurisdictional grounds.

2. Twenty-eight members of the class have actually been named as party-plaintiffs.

Since 1942, Jelleff's has maintained a retirement trust (hereafter sometimes "pension plan") for its employees, to which contributions are made entirely by the company. In general, a participant in the pension plan is an employee at least 30 years of age, but no more than 50, at the time of hiring. After an employee reaches 15 continuous years of employment *and* 50 years of age, he becomes vested in the plan, entitling him to receive certain monthly pension benefits upon retirement. The plan also provides for early retirement on actuarially reduced benefits. Certain defendants in this action are trustees in the Trust created to fund the benefits provided under the plan.

Since originally instituted, the plan has been amended on twelve occasions by the old management. Present management amended the plan to provide for a new method of calculating employee benefits, part of which provides for a reduction of retirement by one-half benefits received under Social Security. All employees hired prior to this amendment have the option of choosing the old or new method of calculation. However, whichever option is selected, credited service is limited to 25 years. The new plan benefits retirees in the higher pay scale.

The Court finds that much dissatisfaction has occurred among Jelleff's retirees for the simple reason that Jelleff's failed to provide them with a meaningful, understandable explanation of computations for retirement. If the alternatives were listed on separate pages headed "Option 1 under 10a" or "Option 2 under 10b", it would have been clear that there was a choice involved and that 10b was the old way of figuring, undiminished by Social Security (Pl.Ex.38). These operational shortcomings of defendants, however, do not present any basis of recovery for plaintiffs.

*Class Action Claims*

The plaintiffs charge that the new owners and management embarked on a concerted and deliberate plan to discharge older employees and to reduce or deny them certain employee benefits. They claim that this plan is evidenced by a pattern of terminations and by a design on the part of management to reduce the company liabilities under its pension plan and to liquidate the plan so as to secure a reversion to the company.

The reasons for terminations may be broken down into three basic categories: voluntary resignations, discharge for cause, and what defendants have called "reductions in force". The plaintiffs have not shown a management policy involving age discrimination which affected this group as a *class*. There was evidence, however, that management sought to expand its product line to appeal to a younger market while presumably still attempting to retain its traditional customers. This policy of attempting to attract a younger clientele was coupled with a generalized policy to reduce the number of personnel in order to cut expenses. This change in business operations had a serious impact on certain of Jelleff's "old-time" employees.

However, because the reasons given for termination were varied, the Court finds it necessary to analyze each plaintiff's circumstances separately to determine whether any *individual* was the subject of age discrimination. Since the Court must give each plaintiff separate consideration, it does not find any basis for awarding class relief.

*Individual Cases*

The Court has heard testimony from 32 former employees with regard to their individual claims of age discrimination. Although the Court has found no basis for class relief, it now proceeds to determine whether any individual employee was subject to age discrimination. The findings with respect to these employees as well as the eight other members of the class have been formulated by the Court from consideration of each individual's circumstances and are set forth here in succeeding paragraphs.

1. The defendants in this case previously served interrogatories upon each member of the class which were due after more than 30 days and by agreement of counsel, on November 15, 1972. On January 19, 1973, defendants filed a motion to compel answers from certain former employees who failed to provide discovery. On March 6, 1973, this Court denied the motion but afforded the defendants the right to renew the motion before the pretrial examiner as to interrogatories still unanswered. At the same time, the Court advised counsel for the plaintiffs to seek the answers from the delinquent members of the class.

Pursuant to motion of the defendants, the pretrial examiner issued an order dated October 9, 1973, to the delinquent class members advising them that they had failed to answer the long pending interrogatories on separate paper, in writing, and under oath, and that unless they provided such answers within 30 days, their claim would be dismissed. At the time of trial, commencing January 14, 1974, Thelma Brown, Lewis Paul Rhodes and William George Taylor [3] had failed to comply with this order and their claims were accordingly dismissed with prejudice.

2. Upon receiving a class action notice pursuant to Rule 23 of the Federal Rules of Civil Procedure, Ruth Guy opted out of the class, and her case is therefore not before the Court.

3. In the course of the trial, counsel for the plaintiffs represented that Leonard B. Ward, who had previously appeared in Court but had not testified, had chosen not to join in the action. Counsel requested his dismissal. His claim is therefore dismissed with prejudice.

■ 4. Four plaintiffs, Alberta Davis, Mary Penley, Esther C. Samuel and Mary E. Wiederhoeft, did not appear at the trial to present testimony and there was no evidence adduced on their behalf indicating the circumstances of their termination. Their claims are therefore dismissed with prejudice.

5. Beulah N. Sandberg was an employee who terminated in 1963. Her claim, if any, would have arisen under prior management and prior to the passage of the relevant statute. This plaintiff, however, does question the computation of the Retirement Fund.

■ 6. Claims of six additional plaintiffs may also be disposed of on essentially procedural grounds. Dorothy K. Smith, Lauretha C. Talley, Mary Speanburg, Vera Valaiti, Gertrude Guy and Willye Carter failed to comply with the two year statute of limitations as set forth in 29 U.S.C. §§ 626(e), 255. The Court does not find a "willful" violation of the Act and would therefore decline to apply the three year statute of limitations. (See Conclusions of Law, # 5, *infra*.)

7. Lastly, four other plaintiffs are disqualified from claiming termination on the basis of age discrimination because they do not fall within the parameters of age which the Act covers.[4] Both Marie J. Rowe and Carrie Wayman Murray were terminated after the age of 65, and therefore are not within the Act's protection. Both John H. Irving and Helen N. Ellis were terminated at ages 39 and 38, respectively, and therefore are not within the statutory coverage.

■ 8. John Bell was employed by Jelleff's at the age of 56 on October 6, 1964. He was terminated by Willard Dick, then President of Jelleff's, on August 29, 1970, at the age of 62. His last position with the store was purchasing agent for supplies.

---

3. The Act as set forth in the Conclusions of Law, *infra*, applies to persons at least 40, but less than 65. Mr. Taylor was 37 at termination, and therefore, not entitled to the Act's protection.

4. See footnote 3, *supra*.

Since Bell was over 50 years when initially employed, he could never become eligible for benefits under the pension plan. Thus, there was no motive to discharge him to lessen the pension liabilities of the company. In addition, Willard Dick testified that the store was dissatisfied with his performance as indicated by his demotion from store superintendent prior to his termination. There is no basis to conclude that his discharge was actuated by age discrimination.

9. Purnie Bishop was a sales person in the coat department who was discharged in April of 1971 at the age of 61. At that time, she had over twenty years of service and was thus vested in the pension plan.

Three defense witnesses: her buyer, Sharon Tehrani, the assistant merchandise manager, Eleanor Crunkleton, and the Personnel Director, Barbara Jones, all testified that her performance was unsatisfactory due to her crippling arthritis. Within two months after her discharge, Miss Bishop applied for and later received Social Security benefits on her representation that she was totally disabled. On these facts, the Court finds that her termination resulted from reasons other than her age.

While the Court does not find any basis for a finding of age discrimination, the Court would note that the defendants have certainly not treated this plaintiff in accordance with its own agreements. (Pl.Ex.38). In the January 1970 Thirteenth Supplemental Amendment to the Retirement Fund, paragraph 20 provides that an employee who becomes disabled after 15 years' service shall receive a Disability Retirement Benefit in an amount of full retirement. The Court finds that the defendants' termination of Miss Bishop for disability made it incumbent upon them to advise the plaintiff that she was entitled to these benefits.

Again, had the defendants taken the time to explain carefully and completely the entire operation of the Retirement Fund, the Court is convinced much of this litigation could have been avoided.

10. Dorothy Pypec, a cashier with Jelleff's with more than 15 years of service, resigned at age 46 in September of 1970. The Court finds that she voluntarily resigned from her employment for her own reasons and that she was not subjected to age discrimination.

11. Charles E. Proffitt was terminated as a display manager in August 1968 at the age of 44 and after 12 years' service. The Court finds from Mr. Proffitt's own testimony that he voluntarily resigned to take a better position after an unsuccessful attempt to secure a promotion from Jelleff's.

12. Gladys M. Nichols was a maid terminated at age 55 and while vested in the pension plan after 21 years of service. Her discharge resulted from excessive absenteeism attributable to an allergenic condition. (Def.Exs. 8, 9, 10, 12) and not as result of her age. Her job was also eliminated as the result of a consolidation of her duties with those of another stock clerk.

13. Mary Harrison Notbohm was a buyer who terminated in March 1970 at age 56 and who was vested in the pension plan after 38 years of service. Mrs. Notbohm, who expressed dislike for the new management personnel, voluntarily resigned as evidenced by her own letter of resignation. (Def.Ex.19). It was not shown that her decision was in any way influenced by age discrimination.

14. Viola Lewis, a maid who was terminated at age 61 and who was vested in the pension plan after 24 years of service. Under the plan she is eligible for early retirement benefits. Ms. Lewis' supervisor reported approximately one month before her termination that her performance was inadequate. (Def.Ex.27) and Jelleff's received several complaints from customers concerning her area of responsibility. (Def.Ex.7). As a result, Ms. Lewis was terminated. There was no evidence to indicate that

her discharge was the product of age discrimination.

15. Marian Garfield was a sales person terminated in July 1971, at age 61 and with 14 years of service. On March 29, 1971, Ms. Garfield was given a corrective interview and suspended one week without pay after an argument with another sales person on the sales floor concerning and in the presence of a customer. The other sales person was terminated because of this serious breach of store policy and Ms. Garfield was specifically warned that any recurrence would result in her discharge. (Def.Ex.26). Ms. Garfield, who appeared to be a contentious witness, committed the same violation shortly thereafter, resulting in her discharge. Thus, her termination was for cause and not the result of age discrimination.

16. Lillian Wells was a buyer of knit dresses who terminated in October of 1970 at age 58 and vested in the pension plan with over 15 years of service. Ms. Wells' position became superfluous with the advent of polyester knit fiber, thus eliminating knit dresses as a specialty item of only a few manufacturers. Knits are now a part of all dress buyers' product array.

Ms. Wells, now living and employed in California, did not claim that her termination was because of her age. Rather, she simply questioned the computation of her pension benefit. The Court finds no age discrimination in the case of this employee.

17. Mildred Edwards was an elevator operator terminated in July 1970 at age 44 after 3 years' service. Her position was eliminated as the result of a contraction in elevator service at the downtown store where she worked. Ms. Edwards, who could not have vested in the pension plan for 12 more years, was not terminated because of age.

18. Maureen C. Tam was a bridal buyer terminated at 51 years and vested after 17 years of service. While on a buying trip in New York in July of 1970, Mrs. Tam suffered an aneurysm rendering her unable to work. Although she was maintained on the payroll for a few months, she was hospitalized in New York and Washington during the fall of the year and her condition only slowly improved. A statement from her doctor as to her capability, which was requested by Jelleff's, indicated that in February 1971, more than six months after the occurrence, she would be able to work only half days for at least four to six weeks. (Def.Ex.35). Jelleff's determined that in light of the demands of a buyer's position, including frequent overnight trips, her position had to be filled by another person. Under these circumstances, the Court finds that Mrs. Tam was not terminated because of her age.

19. Eleanor Tretler was a buyer of women's dresses who terminated in April 1971 at age 57 and was vested in the pension plan after 30 years of service. Mrs. Tretler admitted that she voluntarily resigned to take a position at another specialty shop despite the pleas of the present management of Jelleff's requesting her to stay. Her decision was in no way affected by age discrimination.

20. Rosa Lee Curtis was employed as a cafeteria helper who terminated in September 1970 at age 61 and vested in the pension plan after 24 years' service. She is presently drawing early retirement benefits under the plan. Her testimony was not directed at age discrimination but rather indicated her concern with the computation of her pension benefits. There is no evidence upon which to find that this employee's termination was actuated by age discrimination.

21. Jenny Santarmes was employed in alterations and terminated in June 1970 at age 64 and after 14 years of service. Jelleff's records indicated that Mrs. Santarmes was over 50 at the time of her initial employment which would have made her ineligible to receive pen-

sion benefits. However, more probative evidence introduced at trial establishes that she was under 50 at the time of her initial employment. The defendants have conceded this fact and have represented to the Court that Mrs. Santarmes will be granted the necessary leave of absence to vest her in the pension plan. The Court, nevertheless, concludes that Mrs. Santarmes' discharge did not involve a violation of the Age Discrimination in Employment Act.

22. Mildred Walters was employed as head cashier at the Shirlington branch store and terminated in July 1970 at age 50 after 14 years' service. Olga Coats, the then branch manager of the Shirlington store and no longer in the employ of Jelleff's, testified that the Shirlington branch was overstaffed in the summer of 1970 at a time of declining sales. Mrs. Walters, who was just months short of vesting, was terminated because of "a poor attitude toward the store". (Coats' testimony). She was replaced by an employee admittedly nine years her senior. This replacement, however, had been with the store only one or two years. Therefore, since the replacement was hired after 50 years of age, she would never be eligible for vesting in the Retirement Fund.

23. Lettie Mae Drumming was a stock clerk terminated in July of 1970 at age 53 and having vested in the pension plan with 16 years' service. Ms. Drumming was terminated after being advised "business was falling off". There was no evidence that she had done unsatisfactory work or that she had been criticized in any way relating to job performance.

24. Jarmila Klimes was a sales person who was terminated on April 4, 1971. Although Ms. Klimes submitted a written resignation (Def.Ex. 16), the Court finds that it was submitted in anticipation of being discharged. (On April 4, 1971, Ms. Klimes was called to the Personnel Office where her final paycheck had been prepared despite the fact that it was not her customary pay day.) Ms. Klimes resigned because she did not want her good work record to be blemished by what would appear to any future employer to be a firing, or termination for cause. Although Mrs. Klimes was the subject of a corrective interview on March 22, 1971, (Def.Ex.45) the Court finds that this interview was given in close proximity to the date of termination and was merely groundwork or rationalization for an impending firing.

25. Volina Major was a stock clerk who was terminated in July 1970. She was 50 years old and had been employed by Jelleff's for 12 years. The defendants again made efforts to substantiate a claim of termination for cause by introducing two exhibits, numbers 30 and 39. Exhibit 30 is a "merit review" which was apparently conducted on sales personnel annually. This review was for 1969. While the reviewer was critical of Ms. Major's personality, he rated her "production (daily output)" 80% and said that she could handle additional responsibilities. Shortly thereafter, March 4, 1970, a "corrective interview" (Def.Ex.39) indicated that Ms. Major was being corrected for "*slow* daily output" (emphasis added). As indicated on the interview sheet, however, Ms. Major contended that the porter who should have been cleaning the stockroom was not, and that she had not only her regular duties to perform, but porter's work also. The verbal reason given Ms. Major by Personnel for her termination was that business was slow.

26. Ruby Wedding was a sales person who was terminated in June 1970. She was 54 years old and had been employed by Jelleff's 14 years and 2 months. The 1969 merit review of Ms. Wedding (Def.Ex.23) indicated that she was an average worker. (Her overall rating was 76%). There was no showing by the defense that there was any subsequent alteration in Ms. Wedding's acceptable performance. The Court, therefore, finds that this termination was not for cause.

27. Hilda Harrison Brunzas was a foundation buyer who was terminated in July 1970—9 days short of her 60th birthday. She had been employed by Jelleff's from 1927 to 1941 when she left to have her first child. She returned to work in 1955 and continued until she was terminated in 1970. Her employment history at Jelleff's shows that Ms. Brunzas began as a stock maid and worked her way up "through the ranks" to become a buyer.

Ms. Brunzas was replaced by Sharon Kelly Tehrani, a young woman in her 20's. Ms. Tehrani, who was called as a defense witness, testified that Ms. Brunzas left her department disorganized and with stock which Ms. Tehrani characterized as "outdated". The Court will not consider this evidence as justification, if it is any, for Ms. Brunzas' termination since it was not discovered until *after* she was terminated. Indeed, Ms. Tehrani testified that even under her guidance, the department lost money. Certainly Ms. Brunzas' termination cannot therefore be considered "for cause".

The Court finds that these last six employees were, in fact, terminated because of their age. While the Court realizes that the defendants' decision to change the image and clientele of Jelleff's was a business decision, the Court finds that one method of effecting this change was termination of older employees, simply because they were older. When a business decision results in age discrimination, the Court must intervene.

In a similar situation, the Hickok Manufacturing Company, which had suffered serious financial trouble, attempted to reverse its losses by advancing a "youth movement". *Schulz v. Hickok Mfg. Co.*, 358 F.Supp. 1208 (N.D.Ga. 1973). While the Court recognized the financial problems of the defendant-employer, it found that the business decision of hiring "younger and new people" was being effectuated by discharging an older employee, simply because he was older. As a result, the Schulz Court ordered the plaintiff reinstated and awarded him back pay.

The Court rejects the arguments set forth by defendants alleging that any or all of the above six plaintiffs were fired for cause. The testimony and evidence do not bear out these contentions.

The Court further does not accept the "reduction in force" argument as applied to these plaintiffs. All of the plaintiffs performed their work reasonably well and certainly satisfactorily until the change in management. At that point, it appears that a considerable number of older employees were terminated. The Court has been required to dismiss certain claims for legal reasons; i. e., failure to answer interrogatories and expiration of the statute of limitations. However, the Court is nonetheless cognizant of the ages and situations of those excluded plaintiffs. Overall, this contributes to the Court's finding that, in particular, these six plaintiffs were the subjects of age discrimination.[5] The defendants were unable at trial to convince the Court that these six terminations were for cause or for an across the board reduction in force. The reduction in force was in these six instances a reduction in the "older employee" force.

28. John Gonsa was Controller and Executive Vice President who terminated in May of 1970 at age 53 after 13 years' service. Mr. Gonsa participated in the acquisition of Jelleff's and is still a 10 per cent shareholder in the parent company, Jelleff Associates. Following the purchase, he was a Director of Frank R. Jelleff, Inc. Before the purchase, he was Controller and Vice President under the prior management.

5. In *Schulz v. Hickok Mfg. Co.*, *supra*, at 1212, the Court, citing *Danner v. Phillips Petroleum Co.*, 447 F.2d 159 (5th Cir. 1971), 3 FEP Cases 858 (5th Cir. 1971), reh. den., 450 F.2d 881, 4 FEP Cases 70, also looked to the circumstances of the termination of another employee, who was not a plaintiff in the case.

Other members of management unanimously testified as to their increasing dissatisfaction with Gonsa's performance. With the chronic business decline, the demands on management, but particularly on the Controller, obviously escalated. It is his office which prepares financial forecasts, devises and monitors the budget, and has principal responsibility for the financial decisions of the company.

Prior to January of 1970, members of the Board had concluded that Mr. Gonsa should be replaced. I. Lee Potter, the Chairman of the Board, testified that Gonsa's financial reports were consistently inaccurate and frequently late. Mr. Dick, then President and a member of the Board, stated that Gonsa would often fail to show up at management meetings where finances were discussed and where his presence was essential. Gonsa also purchased over $50,000 in filing equipment which was intended to accelerate authorizations for credit card purchases. Apparently the equipment was unsuited for this purpose and had to be abandoned at considerable loss to the company. While there was considerable testimony on this issue, the Court does not find any basis for believing that Gonsa individually and personally made the decision to purchase the machinery. A purchase of this nature would most certainly have been presented to and concurred in by other Board members.

Alan Potter, who became involved in the company after leaving his law practice and who eventually assumed the presidency, testified that Gonsa predicted a $200,000 profit midway in a fiscal year which ended in a $900,000 loss. Alan Potter, with no accounting background, made an estimate at the same time which accurately predicted the impending loss.

In January 1970, the new merchandiser, Zolbert, arrived at the company. Members of the Board informed him of their dissatisfaction with Gonsa, but it was agreed that Zolbert should make his own evaluation. Zolbert and Gonsa had known each other briefly in their early retailing careers and there was some possibility that Zolbert could achieve results from Gonsa. It soon developed, however, that Zolbert shared the view of others in management that Gonsa should be discharged. In May of 1970, with the approval of members of the Board (other than Gonsa), Zolbert terminated Gonsa.

The above circumstances negate the notion that Gonsa was dismissed because of his age. Indeed, in his deposition taken in this case, Gonsa testified that the only reason he was discharged was an effort by management to secure his stock at a depressed price. This allegation was the subject of a separate suit (*Gonsa v. Jelleff Associates*, Civ. Action No. 900–72 (Def.Ex.5), which has already been dismissed with prejudice.

### Breach of Contract Claim

Gonsa has also asserted in this action that his termination violated an oral contract between himself and the company. This claim is premised upon an allegation of repeated "assurances" of Mr. and Mrs. Jelleff that after an employee has been with the company for 10 years, he could not thereafter be discharged. Although some plaintiffs stated that such a policy was expressed, several testified that they had never heard of such a policy. Further, Marie Tedrow, former Personnel Director for over 30 years when it was operated by the Jelleff family, testified that no such policy existed or was ever expressed because it was recognized that "people change". (Tedrow deposition, p. 6.)

The evidence cannot support a finding that an oral contract was formed between plaintiff Gonsa and the company. None of the basic elements of contract formation, such as offer and acceptance, a bargained-for exchange, or an enunciation of a promise by either party can be derived from this record. Accordingly,

the Court finds that plaintiff Gonsa has not established any contract rights.

The Court need not resolve the factual issue of whether Gonsa was terminated "for cause". It does find, as previously stated, that the termination was attributable to reasons other than age. It also finds that there was no contract which would require cause or some other criterion for dismissal. It is clear from the evidence that management was genuinely dissatisfied with Gonsa's performance and that under the circumstances, it was entitled to discharge an executive officer in whom it had lost all confidence.

*Conclusions of Law*

*Age Discrimination*

■ 1. The Age Discrimination Act expressly prohibits an employer from any employment practice or policy affecting employees in the protected age group which is prompted, motivated or the result of age discrimination. 29 U. S.C. § 623.

2. Individuals entitled to protection of the Act are those between the ages of at least 40, but less than 65. 29 U.S.C. § 631.

3. In pertinent part, the Act specifically exempts employer conduct where "the differentiation [between employees] is based upon reasonable factors other than age" and permits a discharge or discipline "for good cause". 29 U.S.C. § 623. The Department of Labor has issued the following interpretation of these provisions, Interpretations of Age Discrimination in Employment, 29 C.F.R. § 860.103(c) (1972):

> "It should be kept in mind that it was not the purpose or intent of Congress in enacting this Act to require the employment of anyone regardless of age, who is disqualified on grounds other than age from performing a particular job. The clear purpose is to insure that age, within the limits prescribed by the Act, is not a determining factor in making any decision regarding hiring, dismissal, promotion or any other term, condition or privilege of employment of any individual."

■ 4. The Act also contains a precondition to a civil suit to enforce the terms of the Act that the claimant give the Secretary of Labor a "notice of an intent to file such action" at least 60 days prior to the suit and within 180 days after the alleged unlawful practice. 29 U.S.C. § 626(d). This provision is designed to afford the Secretary of Labor opportunity to invoke appropriate conciliatory and mediative action in order to avert litigation. It is also an apparent purpose of this provision to alert the Secretary to cases and situations which may have widespread implications for employees, as the Secretary is empowered to initiate proceedings to supersede pending litigation instituted under the Act. 29 U.S.C. § 626(c).

While this precondition, if strictly construed, was not complied with by the plaintiffs, the Court finds that the failure to comply by the employees was excused by the actions of the employer. The Act places a burden on the employer to post "in conspicuous places upon its premises" a notice containing material explaining the purposes of the Act. 29 U.S.C. § 627. This was never done by defendant Jelleff's. The only evidence adduced at trial on behalf of the defendants was testimony of one plaintiff who claimed to have seen something somewhere in the store about age discrimination. All other plaintiffs testified that no such notice was ever posted; nor did the defendants present any affirmative evidence of compliance with § 627. The Court, therefore, concludes there was no compliance by Jelleff's.

The Court believes that the plaintiff-employees should not be penalized by the defendant-employer's failure to advise them of their rights as required by law. Judge Smith of this Court has also apparently found a correlation between the duty of an employee to notify the Labor Department of an intention to sue and the duty of the employer to post a notice

that the employee has a right to sue at all under the Age Discrimination Act. *Gebhard v. GAF*, 59 F.R.D. 504 (D.D.C. 1973). In *Gebhard*, Judge Smith found he lacked jurisdiction because the employees failed to file proper notice with the Labor Department. However, he preliminarily and specifically found that the notice required by § 627 had been posted by the defendant-employer. *Gebhard, supra*, at 507, n. 7.

In view of the relative "newness" of the Act (at the time this suit was instituted), the plaintiffs' overall lack of sophistication, the defendants' failure to post any notice on the Act and the plaintiffs' *oral* representations to members of the Labor Department that the defendants were terminating large numbers of elderly employees, (Def.Ex. 69, pp. 33–34, 56–7) the Court has not dismissed the action for failure to comply with § 626(d).

5. Under the applicable statute of limitations, a civil action must be commenced within two years after the occurrence of the alleged unlawful practice, except in the case of willful violation which extends the limitations to three years. 29 U.S.C. §§ 626(e), 255.

Generally, willful violations have been found only where there has been a bad faith evasion of the Act and definite knowledge of its applicability. *Hodgson v. Hyatt*, 318 F.Supp. 390 (D.C.Fla. 1970); *Krumbeck v. John Oster Mfg. Co.*, 313 F.Supp. 257 (D.C.Wis.1970); *Dowd v. Blackstone Cleaners*, 306 F.Supp. 1276 (D.C.Tex.1969); *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir. 1972). The Court does not find any such action by the defendants in this case. The Court, therefore, has applied the two year statute of limitations.

6. Under the Act, the plaintiffs have the burden in the first instance to show a prima facie case of age discrimination, after which the burden shifts to the defendants to justify the existence of any disparities. *Hodgson v.*

*First Federal Sav. & Loan Assn.*, 455 F.2d 818, 822 (5th Cir. 1972).

7. Although there have been no decisions which define a prima facie case, the Court construes the statute as requiring the plaintiff to show more than simply the fact that he was within the protected age group and that he was adversely affected by an employment decision.

8. In construing the Act, the Court concludes that when the burden shifts to the defendant, such burden is discharged by the employer showing that its conduct was not motivated by age bias and was "reasonable" or rational. This conclusion is predicated upon the language of the statute which permits differentiation between employees based upon "reasonable factors" other than age. While the Act specifically exempts discharges for cause, the Court does not construe the statute as limiting lawful discharge to "cause" circumstances. Such a reading could prohibit layoffs necessitated by adverse business conditions or the discharge of a company officer or executive whose business views or abilities are considered faulty by management. Such questions of whether employee layoffs were *actually* required by business conditions, whether reductions of personnel contribute to rather than alleviate poor sales, and whether an executive in conflict with management is an able businessman are not the kind of judgments the courts are permitted or required to make under the Act. Thus, the Court holds that the statute is not violated in the case of terminations or other employer decisions which are premised upon a rational business decision made in good faith and not actuated by age bias. To conclude otherwise would make the federal courts a super board of directors reviewing bona fide management decisions, a procedure Congress clearly did not intend by passage of this Act.

9. Construing the statute broadly to effectuate its purposes, the Court finds that a prima facie case was presented by

the plaintiffs. The defendants in presentation of their case carried their burden in negating age discrimination on the claims of those plaintiffs listed Nos. 8–21 and number 28. However, as set forth above, the defendants failed to negate the claim of age discrimination of those plaintiffs, Nos. 22–27.

■ 10. Where "business judgment" exceeds those instances set forth above, and reductions are predominantly of older employees for no apparent, rational reason other than age, the Court concludes that the spirit of the statute has been violated.

■ 11. The claims of Brown, Rhodes and Taylor are dismissed for failure to provide reasonable discovery after having been given opportunity to do so. *Brennan v. Midwestern United Life Insurance Co.*, 450 F.2d 999 (7th Cir. 1971), cert. denied, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792.

*Contract Claim*

12. The findings of fact with respect to the individual contract claim of plaintiff Gonsa are hereby incorporated as the Court's conclusions of law. Plaintiff Gonsa has not established the requisites to contract formation and is thus not entitled to relief on the theory of an oral contract.

■ 13. With respect to the claims of the plaintiffs that employee benefits under the profit sharing and pension plans were reduced or eliminated by the defendants, these assertions are clearly in the nature of contract over which this Court, as it held early in this case, has no jurisdiction. See footnote 1, *supra;* See also Court's references at p. 4.

14. The Court having heard no testimony nor received any evidence on the issue of damages to the six plaintiffs listed in Nos. 22–27 shall schedule a hearing on that issue. This hearing is scheduled for March 29, 1974 at 10 a. m.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DAMAGES

In its Findings of Fact and Conclusions of Law on the merits of this case, heretofore entered on March 11, 1974, the Court found that six individual plaintiffs were terminated from their employment in violation of the Age Discrimination in Employment Act (29 U.S.C. § 621, et seq.).

The Court hereby finds the following facts and conclusions of law with respect to damages in this matter.

*Findings of Fact*

1. Mildred Walters was terminated on July 13, 1970, at a time when her salary was $65 per week. She became reemployed by another employer in a comparable position and at a salary of $65 per week on August 8, 1970. She thus lost four weeks of salary.

While employed at Jelleff's, she was paid the applicable minimum wage. At her new position, she was similarly paid and in fact received pay increases. It has not been shown, therefore, that she suffered the loss of any increments in pay as the result of changing employment.

Ms. Walters subsequently became unemployed on May 18, 1973. Although she has applied for work since then, a chronic back ailment, from a job injury has disqualified her from gainful employment. Ms. Walters, who did not request reinstatement with Jelleff's, appears to have been eligible for Social Security disability benefits since May of 1973.

As the result of her termination, Ms. Walters was prevented from vesting in the Jelleff retirement plan.

The Court finds that this plaintiff is entitled to $260 in back pay (4 weeks x $65). She is also entitled to a retroactive leave of absence necessary to be vested in the Jelleff retirement plan (approximately one year) as if she had worked for 15 years with a last salary

of $65 per week, plus any applicable increases in the minimum wage that occurred during that leave. Her retirement benefit shall be calculated under the existing plan accordingly.

2. Lettie Mae Drumming was terminated on July 30, 1970, at a time when her salary was $75 per week and after having vested in the retirement plan. She was re-employed by another employer on September 8, 1970, at a comparable salary, where she is still employed. During this period of unemployment of five weeks, she received a total of $82 in unemployment benefits.

Since Ms. Drumming was a minimum wage employee, she did not suffer any loss of incremental salary increases. Ms. Drumming was equivocal about reinstatement. A comparable position was proposed at the hearing about which she was undecided. In view of her express reluctance regarding reinstatement, the Court will not order reinstatement of this employee.

Ms. Drumming is entitled to back pay of $293 (5 weeks x $75, less $82 unemployment). She is entitled to a retirement benefit calculated under the existing plan as if she had been employed by Jelleff's at the applicable minimum wage until the date of the hearing, March 29, 1974.

3. Jarmila Klimes was terminated on April 3, 1971, at a time when her salary was $75 per week, plus 1½% sales commission and after having vested in the retirement plan. She was immediately employed in another position at an equal or greater salary.

No loss of back pay was shown or claimed (Pls' Memoranda on Damages, p. 5). Ms. Klimes also declined reinstatement. The Court finds she is entitled to a retirement benefit calculated under the existing plan as if she had been employed with Jelleff's at her last annual salary until the date of the hearing when she declined reinstatement.

4. Volina Major was terminated on July 30, 1970, at a time when her salary was $80 per week. She was re-employed on September 12, 1970, at another position at an equal salary. She received unemployment benefits of $40 per week for four weeks during the interim. As the result of her termination, Ms. Major was prevented from vesting in the Jelleff retirement plan.

In January of 1973, the downtown store in which Ms. Major had been employed was closed. Ms. Major was decidedly negative regarding reinstatement, indicating that she would not work at any of the branch stores presently maintained by Jelleff's. The Court finds that Ms. Major does not seek reinstatement and would not have taken another position at Jelleff's at a branch store when the downtown store closed in 1973. Thus, although Ms. Major became unemployed on January 4, 1974, the Court finds that she is not entitled to back pay from that date to the date of the hearing.

Ms. Major is entitled to back pay for the period July 30, 1970, through September 12, 1970. This amounts to $320 (6 weeks x $80, less $160 unemployment). She is also entitled to a retroactive leave of absence necessary to be vested in the Jelleff retirement plan (approximately three years) as if she had worked for 15 years with a last salary of $80 per week, plus any applicable increases in the minimum wage that occurred during that leave. Her retirement benefit shall be calculated under the existing plan accordingly.

5. Ruby Wedding was terminated on June 27, 1970, at a time when her salary was $75 per week plus 1% sales commission. She was re-employed in another position at an equal or greater salary in April of 1971, where she is presently employed. During the interim, she received $49 per week in unemployment (except possibly two weeks).

Ms. Wedding declined reinstatement with Jelleff's. During the last 18 months of her employment with Jelleff's (1969–1970) Ms. Wedding's salary averaged approximately $276 per month.

The Court finds that Ms. Wedding is entitled to back pay of $818 (9 months x $276, less unemployment benefits (34 weeks at $49)). She is also entitled to a leave of absence necessary to be vested in the Jelleff retirement plan and her pension shall be calculated under the plan as if she were employed at $276 per month until the day of the hearing when she declined reinstatement.

6. Hilda Brunzas was terminated in July of 1970, at a time when her salary was $100 per week, plus a specified commission. She became re-employed in another position without loss of pay due to unemployment. Mrs. Brunzas emphatically rejected reinstatement, stating that she would not accept re-employment at Jelleff's under any circumstances.

During the last 20 months of her employment at Jelleff's (1969–1970), Ms. Brunzas' salary averaged approximately $635 per month. She is entitled to back pay of $515, calculated as follows:

| Period | Jelleff Salary | New Salary | Difference |
|---|---|---|---|
| Sept. 1970 through Mar. 1974 (42 months) | $26,670 | $26,155 * | $515 |

In addition, Ms. Brunzas is entitled to a pension calculated under the existing plan as if she were employed at $635 per month annual salary until the date she rejected reinstatement.

Additionally, the Court makes the following findings of fact. These two plaintiffs were not terminated because of age discrimination.

▮ 7. Jenny Santarmes was terminated June 27, 1970, at age 64. At trial it was determined that Ms. Santarmes was, in fact, under age 50 when she commenced her employment at Jelleff's. For that reason, the defendants agreed at time of trial that Ms. Santarmes was entitled to be carried as a vested member of the retirement plan. The Court finds she is entitled to a retirement benefit calculated under the existing plan at her last annual salary. Ms. Santarmes shall also be paid such sum retroactive to her 65th birthday. (She is now 67 years of age).

8. Purnie Bishop was terminated in April 1971. Ms. Bishop was terminated because of an inability to do her work due to an arthritic condition. As the Court discussed in its March 11, 1974 opinion (Finding 9), it finds that the defendants owed Ms. Bishop the duty of explaining and following up its explanation of her right to retirement benefits under the disability provision of the retirement plan, if she were classified as disabled by the Social Security Administration. Pursuant to the 13th Amendment to the plan, there is a six month waiting period after termination before application may be made for disability benefits. Ms. Bishop was thereafter involved for an additional two months in securing a disability classification from the Social Security Administration. The Court finds that Ms. Bishop is entitled to disability benefits under the plan effective eight months after her termination (i. e., December 1971) through age 65 and continuing at full rate for the rest of her life.

### Conclusions of Law

▮ 1. The Court is empowered in a civil case brought to enforce the Age Discrimination in Employment Act to award appropriate legal and equitable relief including back pay, reinstatement and restoration of employee benefits. 29 U.S.C. §§ 216, 217, 626.

* This reflects the total earnings for 1970 through 1973 introduced by the plaintiff, plus earnings calculated for 1974 of $145 per week for 13 weeks.

 2. Back pay is measured by the difference between the salary an employee would have received but for a violation of the Act and the salary actually received from other employment, less unemployment benefits. The relevant period for measuring back pay begins with the time of the loss of employment as a result of the violation and ends when the affected employee accepts or declines reinstatement. Liquidated damages (i. e., statutory double damages) are not payable except in the case of a willful violation. 29 U.S.C. § 626; *Schulz v. Hickok Mfg. Co.*, 358 F.Supp. 1208 (N.D.Ga.1973); *Monroe v. Penn Dixie Cement Corp.*, 335 F.Supp. 231 (N.D.Ga.1971).

 3. Restoration of pension benefits is a form of relief which the Court is authorized to award under the general principles of the statute.

4. The termination of the six plaintiffs (1–6) did not involve a willful violation of the statute and they therefore are not entitled to liquidated damages. Finding of Fact ¶ 6, Conclusion of Law ¶ 5 (entered March 11, 1974).

5. The findings of fact entered herein are incorporated as conclusions of law, and the plaintiffs shall be awarded the relief specified therein.

Judgment to be entered accordingly.

## JUDGMENT

It is by the Court, this 16th day of April 1974,

Ordered that judgment shall be entered against the defendants in the following manner and amounts:

| | |
|---|---|
| Mildred Walters | $260.00 |
| Lettie Mae Drumming | 293.00 |
| Volina Major | 320.00 |
| Ruby Wedding | 818.00 |
| Hilda Brunzas | 515.00 |

Plaintiffs Mildred Walters, Volina Major, and Jenny Santarmes shall be given retroactive leaves of absence and carried as vested members of the Jelleff's retirement plan. The defendants shall calculate the benefits accruing to each of these plaintiffs and pay them accordingly.

Plaintiff Purnie Bishop shall be paid full disability benefits through age 65 and thereafter paid the full retirement benefits to which she is entitled.

The remaining plaintiffs, Lettie Mae Drumming, Jarmila Klimes, Ruby Wedding, and Hilda Brunzas shall be credited on their retirement plan with employment time through March 29, 1974, the date each of them rejected reinstatement with the defendants. The defendants shall calculate the benefits accruing to each of these plaintiffs, submit report to the Court and pay them accordingly.

In all cases, the defendants shall make themselves and their services available to the plaintiffs for explanation of any calculations and the methods of arriving at those calculations; and it is further

Ordered that attorney's fees in the amount of $3,500.00 shall be awarded to plaintiffs' counsel, Robert J. Wieferich; and it is further

Ordered that costs shall be assessed against the defendants.