Ralph E. COMBES, Plaintiff,

v.

GRIFFIN TELEVISION, INC., d/b/a
KWTV, Channel 9, a corporation,
Defendant.

No. CIV–75–0386–T.

United States District Court,
W. D. Oklahoma.

Oct. 8, 1976.

Stephen Jones, Enid, Okl., for plaintiff.

Roy J. Davis and Mona S. Lambird of Andrews, Mosburg, Davis, Elam, Legg & Bixler, Oklahoma City, Okl., for defendant.

## OPINION

RALPH G. THOMPSON, District Judge.

This action was brought by Ralph E. Combes, plaintiff (hereafter "Combes"), against Griffin Television, Inc., doing business as KWTV Channel 9, a corporation, defendant (hereafter "KWTV"), under the Age Discrimination in Employment Act of 1967 (ADEA), being Title 29 U.S.C. § 621 *et seq.*, under which Act this Court has jurisdiction.

The trial was bifurcated. Trial by jury was held July 19–22, 1976 on the sole question of liability, i. e. the question of whether KWTV had discharged Combes as a newscast anchorman in violation of the ADEA, resulting in a jury verdict for Combes. Trial to the Court on the question of appropriate relief followed on September 21, 1976. Thus, the jury having determined the fact of KWTV's discriminatory discharge of Combes, it is the scope and purpose of this opinion to make findings of fact and conclusions of law on the *remedies* to which Combes is entitled.

Combes seeks several forms of relief: (1) recovery of back wages and benefits that he

would have earned and received had he not been unlawfully discharged; (2) liquidated damages; (3) reinstatement to the same job or comparable position; (4) injunction to prevent further discriminatory acts against him; (5) compensatory damages for pain and suffering; (6) attorney's fees and (7) costs. KWTV concedes Combes' entitlement to back wages and benefits, attorneys fees and costs, denies entitlement or appropriateness of Combes' remaining claims and suggests an award of "front pay" as an appropriate alternative to reinstatement.

Combes was employed by KWTV on June 19, 1972, at the age of 47, and was discharged on January 3, 1975, at the age of 49. He was thus within the ages protected by ADEA. 29 U.S.C. § 631. At the time of his discharge he was "anchorman" on KWTV's television newscasts in the Oklahoma City market or viewing area.

### Enforcement—Remedies, Generally

Title 29 U.S.C. § 626(b) provides in part:

"(b) The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. Any act prohibited under section 623 of this title shall be deemed to be a prohibited act under section 215 of this title. Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided*, That liquidated damages shall be payable only in cases of willful violations of this chapter. *In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation*

*under this section.* * * * " [Emphasis added]

■ This language empowers the courts to fashion a remedy, suited to the facts of the case at hand, which will best effectuate the purpose of the Act and do justice to the parties. The term "or" placed between the various forms of legal and equitable relief rather than the word "and", further indicates the availability but not automatic application of the remedies. The Court will now proceed to discuss the remedies deemed appropriate under the evidence in this particular case.

### Basic Pay and Benefits

■ On his last full day of employment, (January 2, 1976) Combes was paid $485.00 per week, plus minimum increases and cost of living increases. However, beginning on January 3, 1976, the day of his actual termination, a new method of computing his pay would have gone into effect, and he had been so notified by KWTV management on December 20, 1974. Under the new formula Combes would have received $1,667.47 as a monthly base salary (being $20,000 annually) plus a "talent" fee of $10 for each show actually performed. Combes was performing ten shows a week so that the talent fee could have amounted to $5,200 per year in addition to his base salary. On the date of his discharge Combes was paid severance pay computed on the "old" pay formula which had prevailed through his last full day of employment.

Combes urges that the "old" pay formula be used in measuring the amount of back pay, claiming that it was the formula in existence at the time of his actual discharge and had been the basis of his severance pay.

The fact is that it was January 3, 1976 when Combes was discharged. On that day the new pay formula was to go into effect. Thus, had Combes not been discharged he would have been paid on *that* day and *thereafter* under the new formula.

"Back pay is measured by the difference between the salary an employee *would have received* but for a violation of the Act and a salary actually received from

other employment, less unemployment benefits. The relevant period for measuring back pay *begins with the time of the loss of employment* as a result of the violation and ends when the affected employee accepts or declines reinstatement." [Emphasis added] *Bishop v. Jelleff Associates*, 398 F.Supp. 579 (D.D.C.1974).

Here, Combes lost his employment when he was discharged on January 3, 1975 and the formula to apply in measuring what he would have received but for the discharge is properly the "new" pay formula which would have determined his pay had he remained on the job.

In addition to his base salary and talent fees, Combes would have also received 6% increases and cost of living increases in addition to receiving the benefits of company paid health and life insurance premiums.

■ The period for which Combes is entitled to all such back salary and other payments and benefits is from January 3, 1975, the date he lost his employment, to the date of trial of the issue of appropriate relief, September 21, 1976. *Monroe v. Penn-Dixie Cement Corporation*, 335 F.Supp. 231 (N.D. Ga.1971). However, since the wages paid at the date of termination included vacation pay and separation pay through February 6, 1975, the actual beginning date for computation of back wages is February 7, 1975. *Laugesen v. Anaconda Company*, 510 F.2d 307 (6th Cir. 1975).

■ During his period of entitlement to back wages and other benefits, Combes was employed by the Oklahoma Educational Television Authority from September 1, 1975 to June 30, 1976, earning $11,200. The Court finds and concludes that this sum will be set off against the back pay and value of other benefits herein awarded. *Brennan v. Ace Hardware Corp.*, 495 F.2d 368 (8th Cir. 1974).

The Court finds that Combes is entitled to back pay, including minimum 6% increases and cost of living increases in the sum of $35,888.21, talent fees in the sum of $8,000.00, net value of insurance benefits in the sum of $811.95, and profit sharing bene-

fits in the sum of $770.46, totalling $45,-470.62, less earnings from other employment, $11,200., for a total of $34,270.62.

Accordingly, the Court finds, concludes and orders that plaintiff have and recover judgment against the defendant in the sum of $34,270.62 as his back pay and benefits herein specified.

### Liquidated Damages

29 U.S.C. § 626(b) provides that the ADEA shall be enforced in accordance with the powers, remedies, and procedures provided in enumerated sections of the Fair Labor Standards Act of 1938 (FLSA), as amended. There is the added provision, however, that liquidated damages shall be payable only in cases of willful violations.

To give effect to the jury verdict, and upon the Court's own findings from the evidence, the Court concludes that KWTV's discharge of Combes was "intentional, knowing and voluntary" as distinguished from accidentally or unknowingly done. *Hodgson v. Hyatt*, 318 F.Supp. 390 (N.D. Fla.1970).

Having found the discharge to have been willful, the question becomes whether or not the Court must impose liquidated damages in the full amount of back wages and benefits or has the discretion to not impose liquidated damages or to impose them in some lesser amount.

■ The Court finds that it has discretion to avoid the harsh remedy of absolute imposition of liquidated damages in the full amount of back pay and benefits, under section 11 of the Portal-to-Portal Act of 1947 (PPA), 29 U.S.C. § 260, which effectively amended section 16(b) of the FLSA, 29 U.S.C. § 216(b). *Hays v. Republic Steel Corp.*, 531 F.2d 1307 (5th Cir. 1976). Section 260 provides:

"In any action commenced prior to or on or after the date of the enactment of this Act [May 14, 1947] to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 USC §§ 201–216, 217–219,

557], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended [29 USC §§ 201–216, 217–219, 557], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 16 of such Act [29 USC § 216]." Since subsection 7(b) of the ADEA, 29 U.S.C. § 626(b), makes reference to the remedies of the FLSA *as amended*, the flexibility achieved through the PPA is available in cases under the ADEA. Thus, section 11 of the PPA, 29 U.S.C. § 260, gives the court discretion to award no liquidated damages or to award liquidated damages in a lesser sum than the entire amount of back wages and benefits if the court is convinced that the employer was in good faith and had reasonable grounds for believing its act of discharge was not a violation of the Act.

That the flexibility provided by the PPA is available under the ADEA is further made clear by an examination of the legislative history. After reflecting that the enforcement techniques of the FLSA are incorporated by reference into the ADEA, Senator Javits remarked:

"We now have the enforcement plan which I think is best adapted to carry out this age-discrimination-in-employment ban with the least overanxiety or difficulty on the part of American business, and with complete fairness to the workers. I think that is one of the most important aspects of the bill. [113 Cong.Rec. 31254 (1967)]"

This Court agrees with the Court in *Hays*, supra, where it was observed at 1311: "The Senator's reference to "the least overanxiety or difficulty on the part of American business" could hardly have been made if there were an absolute imposition of liquidated damages, the harshness of which prompted Congress to enact section 11 of the PPA."

While the discharge here was "willfully" done (i. e. not accidentally or unknowingly done), the Court is persuaded that the act or omission giving rise to such action was in good faith and that KWTV had reasonable grounds for believing that the act or omission was not in violation of the Act as those terms are contemplated by 29 U.S.C. § 260. Although the jury found that KWTV committed an act of discrimination, the evidence was convincing also that the employer at least believed it had a number of justifiable reasons for discharging Combes other than age, i. e. reasons not prohibited by the ADEA. These included insubordination, declining air performance, and conflict with superiors and other employees. It is thus reasonable to conclude that the discharge was believed to be based also on the permissible reasons rather than having been focused on a specific bad faith violation of the one prohibited reason. It is proper and necessary for the Court to take into consideration such evidence of other reasons for discharge in determining questions of good or bad faith and other factors regarding remedies to be afforded. The Court does so without attempting in any wise to relitigate the jury's determination of discrimination or to speculate on how it assessed the evidence.

Accordingly, under the foregoing findings and authorities, KWTV is not subjected to the harshness of an absolute or automatic imposition of liquidated damages in the full amount of the back pay and benefits. Rather the Court has discretion in awarding no liquidated damages or to award any amount thereof not to exceed the amount of back pay and benefits awarded herein. 29 U.S.C. § 260. *Hays v. Republic Steel Corp.*, supra. The Court concludes that under the evidence and to give effect to the Act, Combes, as a victim of discrimination, is entitled to some liquidated damages but in a sum less than the entire amount of back wages and benefits.

In consideration of these conclusions and the other forms and amounts of relief granted Combes herein, it is the judgment of this Court that the plaintiff be and is

hereby awarded the sum of $16,800.00 as liquidated damages.

### Interest

■ The determination made by the Court on the issue of liquidated damages obviates the computation or consideration of prejudgment interest. Prejudgment interest is not proper where, as here, the amount of the award of liquidated damages exceeds the amount of prejudgment interest. *Brooklyn Savings Bank v. O'Neal*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), and *McClanahan v. Mathews*, 440 F.2d 320 (6th Cir. 1971).

### Reinstatement

■ Reinstatement as a remedy is not mandatory. To grant or deny it lies within the sound discretion of the trial court after a careful consideration of the particular facts of each case.

■ In support of reinstatement Combes argues that there is nothing unique, unusual or sensitive about the position of a television anchorman and that Combes and KWTV personnel and management have worked and can work harmoniously. While urging that no undesirable consequences would result from his reinstatement in this case, Combes further argues that even if the consequences to the employer or its employees are harsh or cause conditions of tension, chaos, unrest and serious financial burden, such considerations must yield to the employee's right to be free from discrimination and reinstatement should nevertheless be ordered.

One of KWTV's arguments in opposition to reinstatement is that management must have the prerogative of evaluating and perceiving a performer's "air" talent and fashioning through its own selection on-the-air positions or combinations of performers in search of the best performance for its viewers.

The evidence in this case establishes that while there were instances of compliments to and apparent satisfaction with Combes from time to time by KWTV management, there was also evidence of discord, disagreement, antagonism, conflict and suspicion between Combes and KWTV personnel and management, both in the past, at present and predictably in the future. Comparative fault for this condition is not the issue here. It is the fact of its existence that is important.

In the context of his relationship with management, other air personalities and other employees, the evidence shows that a television anchorman, as a performing air personality, is indeed unique, unusual or sensitive. Discord, tension, suspicion, antagonism and sensitivity among them would be productive of a very difficult employment environment, with the particular difficulty of being perceivable to the viewing audience. Such a situation would be uniquely detrimental and destructive to both Combes and KWTV as well as to other employees affected. A court should avoid forcing such an employment relationship on either an employer or an employee when the purposes of the ADEA can be given effect through the granting of fair, sufficient and appropriate relief fashioned from other available types of remedies.

While factually distinguishable, somewhat analogous reasoning was applied by the Court in denying reinstatement in *Hyland v. Kenner Products Co.*, 11 E.P.D. ¶ 10926 (D.Ohio, 1976). There the worker was in an executive or management position. The Court reasoned that if reinstated plaintiff would find herself in the position of possessing confidential information but not enjoying the trust and confidence of her superiors and that otherwise the parties could not get along and establish a proper working relationship. Also factually distinguishable but offering some degree of analogous reasoning is the case of *Bishop v. Jelleff Associates*, 398 F.Supp. 579 (D.D.C. 1974). There the Court denied reinstatement to an executive who would have been in conflict with management.

Here, reinstatement would not be in the best interests of either party. There is no national policy requiring the courts to take an absolute or arbitrary approach in order-

ing reemployment of a discharged employee. The need is to protect workers against discrimination and to be realistic and considerate to avoid unconscionable difficulties to both workers and employers as would result here from reinstatement. This calls for a deliberate and judicious exercise of the broad discretion and flexibility provided the court both by the ADEA and through its inherent equitable powers.

In consideration of all of the foregoing and with careful regard to the totality of the other remedies afforded herein, the remedy of reinstatement is denied.

### Injunction

Having so ruled on the question of reinstatement, Combes' requested injunction against KWTV to prevent further discrimination against him upon reinstatement is denied as moot.

### Physical Pain and Mental Suffering

The parties disagree on the question of availability of damages for physical pain and mental suffering in cases arising under ADEA. Combes relies on *Rogers v. Exxon Research and Engineering Co.*, 404 F.Supp. 324 (D.N.J.1975), which while distinguishable factually from this case does analyze and discuss at length this question and concludes that such damages are within the arsenal of remedies available to the Court in making whole the victims of discrimination. See also *Bertrand v. Orkin Exterminating Company, Inc.*, 419 F.Supp. 1123 (D.C.N.D.Ill., E.Div., 1976). Defendant argues against the availability of such a remedy but cites no direct authority in support of its position. Thus, the Court concludes that such damages may be considered among the other forms of remedies to be fashioned, in its discretion, in giving effect to the Act on a case by case basis. Here, Combes' testimony was to the effect that he suffered, as a result of his termination, shortness of breath, insomnia, sweating sleeps, fatigue, depression, embarrassment, indigestion, loss of appetite, loss of weight and other apparent symptoms of stress for which he seeks damages of $25,-000. There was no evidence of any physical injury or need for a physician's care.

The Court finds and concludes that the evidence has established Combes' entitlement to damages for physical pain and mental suffering in the sum of $500.00 and that plaintiff have and recover judgment against the defendant in such amount.

### Attorneys Fees and Costs

No dispute exists between the parties on the question of Combes' entitlement to attorneys fees and costs, and the Court is convinced that Combes is so entitled. *Brennan v. Ace Hardware Corp.*, supra. It remains only for the Court to determine the reasonableness of their amounts. The evidence has shown that Combes' counsel has been paid $4,700 for his services through the jury trial but that he has been paid no fee for services thereafter, including the preparation for, and participation in, the non-jury trial and briefing of the question of remedies following it. Such post-jury trial services represent some 50 hours of time by Combes' counsel and his associates. In addition, Combes' counsel has incurred reasonable and necessary out-of-pocket expenses in the prosecution of this case in the amount of $1,311.31, which would not be taxable as costs. The Court finds that its award of attorneys fees, while fair to both parties, is conservative in consideration of the skill, time, effort, extent of preparation and results obtained and the novelty and importance of this case. Defendant is ordered to pay Combes as and for his attorney's fee the sum of $7,500 plus $1,311.31 for such attorney's expenses.

Combes' costs incurred herein, as properly assessed by the Clerk of the Court, will also be paid by defendant. 29 U.S.C. § 216 and 28 U.S.C. § 1920.

### Order

It is therefore considered, ordered, adjudged and decreed that plaintiff have and recover from the defendant the total sum of $51,570.62, attorneys fees and expenses of $8,811.31 and costs to be assessed by the Clerk of the Court.