**James F. CARPENTER**

v.

**CONTINENTAL TRAILWAYS.**

Civ. No. 3–77–377.

United States District Court, E. D. Tennessee, N. D.

Feb. 2, 1978.

MEMORANDUM

ROBERT L. TAYLOR, District Judge.

James F. Carpenter seeks legal and equitable relief, including damages, reinstatement to former employment, back pay, liquidated damages and attorney's fees for alleged discriminatory termination of his employment with the defendant. The action is based upon an alleged violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* Jurisdiction is based on Title 28 U.S.C. § 1337 and 29 U.S.C. § 626(c).

Plaintiff contends that after thirty-one years of faithful and competent service with the defendant his services were terminated on March 31, 1977. He says that he was involuntarily retired because of his age; that his involuntary retirement was part of a pattern of discrimination against management officials over forty years of age; and that the Age Discrimination in Employment Act was violated by the defendant's forcing his retirement.

In response to the claims made by the plaintiff, the defendant contends that plaintiff voluntarily left his employment and went into voluntary retirement. Defendant denies that it violated the Age Discrimination in Employment Act in dealing with the plaintiff. Defendant contends that all of its actions with regard to the plaintiff were based upon reasonable factors other than age. Defendant denies that it is guilty of the charge of engaging in a pattern of discrimination against management officials over forty years of age.

*Plaintiff's Work Experience*
*with Defendant*

Plaintiff has worked in various managerial and executive positions for defendant since he first started in the bus business in February 1946, as a Superintendent in Dallas.[1] Since that job, plaintiff has moved

E. H. Rayson, Warren L. Gooch, Knoxville, Tenn., for plaintiff.

Dwight K. Luter, Memphis, Tenn., Anna F. Hinds, Knoxville, Tenn., for defendant.

1. Plaintiff's first job was actually with an independent bus company later taken over by the defendant. However, for purposes of plaintiff's total years of employment experience with defendant, it has been defendant's policy to treat those initial years as part of plaintiff's experience with the defendant.

five times, between jobs in California and Tennessee, including a thirteen-year period as Assistant General Manager in Los Angeles during the years from 1957 to 1970. With the exception of the plaintiff's transfer in 1952 from the position of Regional Manager at Los Angeles to the position of Regional Manager at Memphis, which transfer was to a position of equal status, each of the transfers experienced by the plaintiff was a promotion to a position of higher status with a commensurate increase in salary. (See Exhibit 10).

From July 1970 through April 1976, plaintiff served as President and General Manager of Tennessee Trailways, Inc., a subsidiary of the defendant, with offices in Knoxville, Tennessee. In this position plaintiff reported directly to the President of Trailways, Hubert L. Glisan. In March of 1976, Mr. Glisan convinced plaintiff to accept a position as Area General Manager in Los Angeles. Glisan was of the opinion that plaintiff's prior experience with the Los Angeles office and his experience with labor problems would help plaintiff handle the difficult assignment. The Los Angeles area had been operating at a loss for a couple of years and had been suffering from labor problems, including pressure from minority groups.

Because of labor negotiations at Tennessee Trailways, plaintiff was asked to remain in Knoxville until those negotiations were completed. In late May, plaintiff moved to Los Angeles to assume his new position as Area General Manager in Los Angeles. This move was considered a promotion and the transfer included a pay raise which totaled $8,700, raising plaintiffs salary from $24,000 a year to $32,700 a year. In Los Angeles plaintiff had about sixty salaried employees working under him.

Plaintiff began his job in Los Angeles about June 1, 1976. As Los Angeles Area General Manager, he was one of three Area General Managers in the Western Region who reported directly to Regional Senior Vice President, William F. Aikman. Aik-man was one of four Regional Senior Vice Presidents who reported directly to President Glisan.

During plaintiff's entire career with defendant he was never reprimanded, and received many commendations for his work. (E. g., letter of President Glisan, Exhibit 11). On August 31, 1976, after plaintiff had been on the job in Los Angeles for three months, his Supervisor, Mr. Aikman, filed a written performance appraisal at plaintiff. (Exhibit 3). Under the category of plaintiff's accomplishments, Mr. Aikman listed eleven areas wherein plaintiff had met or exceeded expected standards. Only one area was listed as needing any improvement. Finally, in the space provided on the form to list the employee's potential for promotions, Mr. Aikman stated that he felt the plaintiff was capable of being immediately promoted to the position of Regional Senior Vice President, the position Aikman then held. This may have been a particularly important recommendation, because Aikman himself was already past the retirement age of sixty-five, and it was common knowledge that he would soon retire. Also, a summary of appraisals from the Western Region, compiled by W. H. Edwards in the central personnel office, and dated December 30, 1976, reveals that plaintiff was the only person in the Western Region, to be recommended by Aikman for the Regional Senior Vice President's position. (Exhibit 4).

In January of 1977, plaintiff finally sold his home in Knoxville. He had decided to live in an apartment in Los Angeles due to the high cost of housing. While on the job in Los Angeles, plaintiff kept a regular work schedule of reporting to the office at 6:00 A.M. and staying till around 5:00 P.M., working occasionally on weekends.

### Reorganization of Trailways

On February 1, 1977, Trailways named a new President, Kevin Murphy, 49 years of age with one year of experience with the Company. Mr. Glisan, age sixty, with thirty-six years of service with Trailways, was moved out as President and made Vice

Chairman of the Board. This move was made in an attempt to save the Company from financial calamity. The new President called a meeting of the Vice Presidents on February 13–16, 1977, in Dallas, to discuss reorganization of the Company. At that meeting, Aikman learned that his position was to be abolished, and that there would be only one vice president for the entire western half of the country, instead of two. Mr. Ben Robinson, age 39, with 21 years of experience with the Company, who was then Regional Senior Vice President for the Central and Southwestern Region, was to become the Vice President for the entire western United States.

On February 17, 1977, after Mr. Aikman returned to Los Angeles, he told the plaintiff that he was "out." Plaintiff had heard that some changes were under consideration, but he was shocked to learn that he was without a job. Plaintiff asked if he might be considered for another job in the Company, and Aikman told him that the City Manager's job in Albuquerque, New Mexico might be offered to him by Mr. Robinson when he came out to Los Angeles. Plaintiff responded that he would like to discuss that possibility as he certainly did not want to retire now because of the severe hardship this would mean in his retirement program. Plaintiff, if forced into immediate retirement, would receive slightly over $400 per month. However, if he could stay with the Company at approximately the same salary until he was sixty-five, which was slightly over three years away, his monthly benefits would more than double, amounting to around $900 per month. Mr. Aikman did not have authority to discuss the Albuquerque job with plaintiff as he (Aikman) was on his way out also, and was retired on October 1, 1977 at the age of sixty-eight.

### Voluntary or Involuntary Retirement?

In late February, Ben Robinson came to the Los Angeles office to talk to those managerial employees who had lost their jobs. Robinson states that during his conversation with plaintiff he started to offer plaintiff another job, but that the plaintiff indicated that he was not interested. In essence, this would mean that plaintiff voluntarily retired by refusing to accept other employment with Trailways. Mr. Aikman stated that he overheard this conversation and that Robinson made an offer. Plaintiff stated emphatically that Robinson made no other offer to him and that he would have certainly been interested in any such offer as he had a strong desire to remain with the Company until he was sixty-five. Plaintiff was asked to stay on the job until the end of March 1977 due to the upcoming labor negotiations.

In addition to the incentive of substantially increased retirement benefits, plaintiff has offered other evidence to support his argument that he was forced to retire. On the part of his application for retirement benefits which states "Date Retired," plaintiff made a handwritten modification, changing the application to read instead, "Date I am being retired." (Exhibit 8). Also, on the "pink sheet" form, dated March 31, 1977, indicating plaintiff's severance of employment with Trailways, signed by Mr. Aikman, the reason for termination is stated as: "Placed on retirement at direction of the Company." (Exhibit 9).

Based on all the evidence and observation of the witnesses, the Court is of the opinion and finds that plaintiff was forced to retire, effective March 31, 1977.

### Violation of the Act

██ Of course, forced retirement or firing of an employee, in itself, is not a violation of federal law. It is not unusual for companies in the financial position that Trailways found itself in early 1977 to lay off or terminate many employees, as it did, in an attempt to cut expenses. However, under the Age Discrimination in Employment Act of 1967, if an affected employer, in making the decision to fire an employee in the protected age bracket of 40–65 years,

even considers as one factor in that decision the employee's age, and if that factor made a difference, then the employer has violated the Act. *See Laugesen v. Anaconda Company,* 510 F.2d 307, 317 (6th Cir. 1975). A finding that age was used as one of the determinative factors in such a decision does not depend on direct evidence of such but may be inferred from a totality of the circumstances. *Id.,* at 314; *King v. International Union,* 443 F.2d 273 (6th Cir. 1971).

Plaintiff was replaced by Mr. Holland,[2] who was about 42 years of age, and who had about twenty years of experience in accounting with the Company, with only one year of experience in managing operations.

Plaintiff has produced a list of managerial employees who were terminated in the Western Region after Mr. Aikman returned from the Dallas meeting in February 1977. (Exhibit 6). Mr. Aikman, on cross-examination, admitted that, although many other employees were discharged in his region, these seven were the only ones in the higher management levels that were discharged in the initial reorganization of the Western Region. Each of the seven managerial employees, including plaintiff, is between the ages of sixty and sixty-five. None of these seven were retained in other jobs with the Company. Plaintiff had difficulty in obtaining additional information about the ages of employees fired in the reorganization, but this list is strong evidence that age was a factor, at least in the decision on which managerial employees in the Western Region were to be fired or forced into retirement.

Additional evidence was offered by the plaintiff concerning the eighteen Area General Manager positions that were reduced to nine such positions in the reorganization. While this evidence is not nearly as strong as the evidence concerning just the Western Region managerial employees, it offers some support to plaintiff. Of the eighteen Area General Managers before the change,

five were between the ages of sixty and sixty-five. None of these five were allowed to stay as Area General Managers, with the exception of Mr. Hylton, who stayed until the end of the year when he retired at sixty-five, and was replaced by Stan Frieden, age 32. As to the other four former Area General Managers over sixty, two were offered and accepted other jobs, although presumably such jobs were lower in the Company hierarchy, and the other two, plaintiff and C. C. McClendon, age 61, were terminated without offers of further employment. (See exhibits 13 and 18).

■■ It is well established that the burden of proof is on the plaintiff to establish a violation of the Act by a preponderance of the evidence. *Gill v. Union Carbide Corp.,* 368 F.Supp. 364 (E.D.Tenn.1973). After considering all the evidence and observing all the witnesses, the Court is convinced and finds that the preponderance of the believable evidence demonstrates that age was a determinative factor in defendant's decision to force the plaintiff to retire at age sixty-one. Therefore, defendant violated the Age Discrimination in Employment Act of 1967.[3]

### Remedies for Unlawful Age Discrimination

■ Plaintiff is able and available for work. He has vigorously sought employment since his forced retirement on March 31, 1977. With one exception, a six week job as a travel consultant, he has been unable to find employment.

Plaintiff has lost approximately ten months employment at $2,725 per month, or $27,250. During the same period he received $5,031.16 in severance pay, $1,200 from other employment, and $4,039.80 in retirement benefits. Plaintiff is entitled to a judgment for the balance of $16,979.04, plus such additional amount as he would have earned through the date of his reinstatement, less amounts to which defendant would be due a credit.

---

2. Mr. Holland's job was expanded to include several more cities.

3. The Court has previously ruled that defendant's retirement plan did not fall under the exemptions of 29 U.S.C. § 623(f)(2).

Plaintiff is entitled to reinstatement to such 'employment with the defendant as is reasonably equivalent to his former position, and the defendant is directed to offer plaintiff such reinstatement.

The plaintiff is entitled to recover reasonable attorney's fees, the amount of which the parties will resolve, or failing therein, which the Court will fix.

█ The Court disallows liquidated damages as the Court does not find that defendant's actions were willful.

Order Accordingly.