**Wayne R. METZ, Plaintiff,**

v.

**TRANSIT MIX, INC., Defendant.**

No. S85–354.

United States District Court,
N.D. Indiana,
South Bend Division.

June 27, 1986.

Ivan E. Bodensteiner, Valparaiso, Ind., for plaintiff.

Jere L. Humphrey, Plymouth, Ind., for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause was tried without intervention of a jury on June 23, 1986. The cause was originally scheduled for jury trial commencing that date. Following receipt of the directive of the Administrative Office of the United States Courts directing that no civil juries be impanelled following June 16, 1986, the court conferred with counsel, and the parties consented to trial by the court sitting without a jury pursuant to an oral stipulation in open court and entered into the record. Fed.R.Civ.P. 39(a). This memorandum opinion is intended to satisfy the court's obligation to find the facts specially and to state separately the court's conclusions thereon. Fed.R.Civ.P. 52(a).

### I

### A

Plaintiff Wayne R. Metz is a United States citizen born on July 12, 1929. He resides in Starke County, Indiana. Transit Mix, Inc., an Indiana corporation, is an "employer" within the meaning of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* The principal office of Transit Mix is located in Plymouth, Indiana. Transit Mix maintains a "satellite" plant in Knox, Indiana. Mr. Metz managed the Knox plant from April, 1956 until December, 1983. By 1983, Mr. Metz was responsible for two other employees as part of his duties as manager of the Knox plant.

Transit Mix sells concrete. Mr. Metz's customers at the Knox plant were construction contractors. From 1980 through 1984, the construction industry performed poorly in the Knox County, Indiana area and Transit Mix sales from the Knox plant reflected that poor performance. Transit Mix records reflect the following for the fiscal years ending in April of the calendar years shown:

|  | 1981 | 1982 | 1983 | 1984 | 1985 |
|---|---|---|---|---|---|
| Sales, Knox plant | $382,693 | 285,353 | 247,060 | 187,296 | 461,609 |
| Profit, Knox plant | 82,768 | 20,823 | 7,336 | (33,024) | 81,209 |
| Profit, both plants | 175,117 | (53,296) | 39,117 | (28,594) | 80,120 |
| Sales, Plymouth plant | 925,671 | 674,993 | 954,576 | 924,051 | 1,231,777 |

Mr. Metz was not laid off or disciplined by Transit Mix before December, 1983. Mr. Metz received a $1,000.00 salary increase in 1983. In November, 1983, Mr. Metz was notified by Mr. Will Lawrence,

the president of Transit Mix, that the Knox plant would be closed for the winter effective December 1, and that Mr. Metz would be laid off following his three week vacation. Mr. Lawrence later told Mr. Metz that he was closing the "satellite" plant because work was slow. Mr. Metz was making an annual salary of $26,000.00, or approximately $15.75 per hour, and was receiving paid health insurance benefits for himself and his family when he was laid off. Mr. Metz was among the highest-paid Transit Mix employees at the time of his layoff and was, with the exception of Mr. Lawrence's mother, the most senior Transit Mix employee.

Mr. Lawrence testified that when he first spoke with Mr. Metz, he had not decided whether to re-open the Knox plant after closing it for the winter. Mr. Lawrence neither notified Transit Mix, Inc. customers, nor announced to Transit Mix employees, that the Knox plant would be closed permanently.

Mr. Lawrence knew that the plant was in need of repair. In February, 1984, he sent the assistant manager of the Plymouth plant, Donald R. Burzloff, to examine the plant and report to Mr. Lawrence the extent of needed repairs.

Mr. Burzloff was born on May 14, 1940, and was hired by Transit Mix in April, 1966. He had attended school in Knox.

Repairing the Knox plant was among Mr. Burzloff's regular springtime duties; sometimes he had additional help from the Plymouth plant. In February, 1984, he found it necessary to do general cleaning and to repair the boiler and the conveyer and roller system. Mr. Burzloff performed the repairs more cheaply than Mr. Lawrence had feared. As Mr. Burzloff was performing those repairs, regular customers of the Knox Transit Mix plant began to appear and ask about placing orders. Mr. Burzloff first asked Mr. Lawrence for permission to take those orders, and later asked whether he could try running the Knox plant. Mr. Lawrence gave Mr. Burzloff his approval of the idea, and so in April, 1984, Mr. Burzloff called Mr. Metz

for the keys to the plant. Mr. Burzloff, a 43–year-old, 18–year veteran of Transit Mix had replaced Mr. Metz, a 54–year-old, 28–year veteran, as manager of the Knox Transit Mix plant.

### B

The decisions to reopen the Knox plant, to select Mr. Burzloff to operate it, and to terminate Mr. Metz are inseparable. When Mr. Burzloff asked Mr. Lawrence for a chance to run the Knox plant, Mr. Lawrence reasoned that if Mr. Burzloff failed to produce profits at the Knox plant, he could be returned to the Plymouth plant and take orders for the Knox plant by telephone. Upon that happening, the Knox plant effectively would have been closed and the position of Knox plant manager— Mr. Metz's position—would have been eliminated. In light of Mr. Metz's unfamiliarity with the Plymouth area and the differences of opinion and style between Mr. Metz and those who populate the Plymouth plant, it was legitimate and non-discriminatory to determine to use Mr. Burzloff, rather than Mr. Metz, in the experiment. Greater flexibility was available.

Mr. Burzloff's flexibility was not, however, the sole reason for the decision to replace Mr. Metz. The initial reason for closing the Knox plant, at least temporarily, and to lay off Mr. Metz was financial: Mr. Metz's salary was too high to justify in light of the poor performance of the Knox plant. That reason permeated the eventual decision to place Mr. Burzloff in charge of the Knox plant upon re-opening; Mr. Burzloff earned slightly more than half of Mr. Metz's salary. No evidence suggests that Mr. Lawrence believed, in the spring of 1984, that Mr. Burzloff would produce more business in the Knox plant than would Mr. Metz. Mr. Burzloff simply asked for a chance and was given that chance. The salary savings, the court finds, was among the reasons he was given that chance.

The court finds that each of these reasons—the greater flexibility afforded by Mr. Burzloff and the salary savings—was a

determining factor in the decision to terminate Mr. Metz.

## C

Mr. Burzloff's beginning salary as manager of the Knox plant was $8.05 per hour, slightly more than half of what Mr. Metz had been making. Mr. Lawrence testified that Mr. Metz's salary played a factor in Mr. Metz's termination; business wasn't good enough, Mr. Lawrence testified, for Mr. Metz's salary. Mr. Lawrence did not ask Mr. Metz to take a pay cut or to take a different job within the company. Mr. Lawrence and the Plymouth plant general manager, James Houin, testified to personality conflicts that may have caused difficulty had Mr. Metz been relocated to the Plymouth plant.

Mr. Metz had been receiving unemployment compensation; Transit Mix did not object to his receipt of such benefits. In July, 1984, Mr. Metz obtained employment with the Starke County Highway Commission. Had Mr. Metz not been laid off and then terminated from Transit Mix he would have earned $70,476.00 working for Transit Mix between December, 1983 and June 1986. Instead, Mr. Metz has earned $24,900.00 from the highway commission and received $2,970.00 in unemployment compensation. Mr. Metz has lost wages in the amount of $42,606.00 as a result of the termination of his employment by Transit Mix. Additionally, since his employment by the Starke County Highway Commission, Mr. Metz has spent approximately $100.00 per month for health insurance benefits comparable to those that he had received as part of his employment by Transit Mix.

Further, in 1983, Mr. Lawrence told Mr. Metz that Mr. Metz should pay the income taxes due on dividends from an insurance policy because, Mr. Lawrence stated, the policy belonged to Mr. Metz. Accordingly, Mr. Metz paid taxes on 1983 dividends of $136.16 and interest in the sum of $86.61 on accumulated dividends. Following Mr. Metz's termination, Transit Mix cashed the policy in for $4,236.47.

## D

Transit Mix hired several persons during 1984 and 1985. None of those persons were managerial employees, although one, Judy Xaver, was (and remains) an office worker whose duties include some of the duties Mr. Burzloff had performed when he was assistant manager of the Plymouth plant. Transit Mix has not replaced Mr. Burzloff as assistant manager of the Plymouth plant. Since May, 1986, Transit Mix hired a new managerial employee, Mr. Riddle, to help with quality control. Transit Mix now plans to construct a LaPorte branch, which will be run by Richard Overmyer, a person hired since Mr. Metz was laid off.

Mr. Lawrence was generally aware of the law against age discrimination, but he neither read nor inquired about it prior to terminating Mr. Metz's employment. He testified that he did not believe that he was engaged in age discrimination.

The Starke County construction industry has begun to improve in the past year or two, although its recovery is incomplete. When he was laid off in December, 1983, Mr. Metz was aware of plans for construction in Starke County in 1984: a large addition, two bridges, one or more apartment complexes and perhaps a county building were to be built in 1984. Mr. Metz testified that "ninety-nine percent of the time", when his customers poured cement, they bought the cement from him. The court finds that much, but not all, of the increased business at the Knox Transit Mix plant is due to improvement in the Starke County construction industry.

## II

Mr. Metz brings this action alleging violation of the Age Discrimination in Employment Act. He has complied with 29 U.S.C. § 626(d) by filing a timely complaint with the Equal Opportunity Commission, Charge No. 053842097. This court has jurisdiction over the complaint pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 626(b), (c).

## III

### A

To establish a prima facie case in an age discrimination case, a plaintiff who was replaced in his position by a younger person must show (1) that he was a member of the class protected by the statute, *i.e.*, that he was aged 40 to 70, (2) that he was qualified for the position, (3) that he was terminated, and (4) that he was replaced in his position by a younger person. *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93 (7th Cir.1985); *Huhn v. Koehring Co.*, 718 F.2d 239 (7th Cir.1983); *Loeb v. Textron*, 600 F.2d 1003 (1st Cir.1979), adapting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Mr. Metz has satisfied the requirements for a prima facie case; indeed, his ability to do so does not appear to have been a matter of serious dispute. Mr. Metz was 54 years old when terminated; his qualification for the position is demonstrated by his having held it for twenty-five years; and Mr. Burzloff, at 43 a younger man, replaced Mr. Metz in the position of manager of the Knox plant. This prima facie case "raises an inference of discrimination", *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), and creates a presumption that Transit Mix unlawfully discriminated against Mr. Metz. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

### B

Once Mr. Metz established his prima facie case as defined by *McDonnell Douglas*, the production burden shifted to Transit Mix to articulate some legitimate, non-discriminatory reason for the termination, following which it was open to Mr. Metz to attempt to show that the reason so articulated was simply a pretext for discriminatory conduct. *Christie v. Foremost Ins. Co.*, 785 F.2d 584 (7th Cir.1986). The defendant is not assigned a burden of persuasion; Transit Mix need not prove that it was motivated by the reason so articulated.

"It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.... The explanation provided must be legally sufficient to justify a judgment for the defendant." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254–255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Upon such a showing, the mandatory presumption of discrimination established by the prima facie case disappears, but permissible inferences from the evidence remain. *Id.* at 255 n. 10, 101 S.Ct. 1089 at 1094 n. 10. The burden of persuasion remains throughout upon the plaintiff to show that age was a determining factor in his termination. *LaMontagne v. American Convenience Products, Inc.*, 750 F.2d 1405 (7th Cir.1984); *Golomb v. Prudential Ins. Co. of America*, 688 F.2d 547, 551 (7th Cir.1982) ("the employer's articulated reason may in fact have been true, but if age was also a determining factor in the employer's decision, the plaintiff has carried his burden of proof"); *Kephart v. Institute of Gas Technology*, 630 F.2d 1217 (7th Cir. 1980).

Transit Mix met its burden of articulating a legitimate non-discriminatory reason for terminating Mr. Metz. The evidence discloses two reasons for Mr. Metz's termination, one of which reasons is, without question, legitimate and non-discriminatory.

The greater flexibility available through the use of Mr. Burzloff, who could be transferred back to Plymouth should the closing of the Knox plant prove necessary, is a reasonable factor other than age. This satisfies Transit Mix's burden to show a legitimate, non-discriminatory reason for Mr. Metz's termination.

### C

The plaintiff maintains that the second reason for his termination—the salary savings in choosing Mr. Burzloff over Mr. Metz—constitutes a violation of the Age Discrimination in Employment Act and entitles him to recovery. He reasons that he

had a higher salary than Mr. Burzloff (and most other Transit Mix employees) because of his age. Accordingly, to discharge him due to his salary is to discharge him because of his age, a violation of the law. If Mr. Metz's age was a determining factor in his termination, he is entitled to recover.

In *LaMontagne v. American Convenience Products, Inc.*, 750 F.2d 1405 (7th Cir.1984), the plaintiff argued that his termination had been motivated by the desire to replace him with a lesser-paid, less experienced employee. Without finding it necessary to reach the question, the court stated, "We think it questionable whether the motivation postulated by La Montagne's theory would in itself constitute age discrimination." In *Haydon v. Rand Corp.*, 605 F.2d 453 (9th Cir.1979), the court reversed a grant of summary judgment to the employer, due to a factual dispute as to the pretextual nature of Rand's asserted dissatisfaction with Haydon's work. The court addressed an argument similar to that raised here by Mr. Metz:

> As a long-time employee, Haydon earned a high salary and therefore was employed at a relatively high cost to Rand. Haydon argues that there is a direct relationship between his age and the cost of his employment, and that Rand improperly considered his employment costs in selecting him for discharge. The record on summary judgment does not clearly disclose the extent to which the cost factor influenced Rand's decision to discharge Haydon. Accordingly, we decline the invitation to discuss the circumstances in which an employer may base employment decisions on relative costs of employment. It may be unnecessary to reach that difficult issue if the evidence presented at trial fails to support Haydon's allegations.

605 F.2d at 455. This case requires this court to discuss and, within the confines of this case, to decide the circumstances in which an employer may base employment decisions on relative costs of employment.

At the outset, it is important to note what this case is not. First, this is not a case in which the employer closed the shop in which the plaintiff worked. Such a case would be governed by *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210 (7th Cir.1985), which held that a decision to close a millshop that had consistently lost money was a perfectly legitimate business decision that rebutted the plaintiff's prima facie case and entitled the employer to judgment n.o.v. The Knox plant, however, was not closed; Mr. Burzloff simply replaced Mr. Metz as its manager. Accord, *Dorsch v. L.B. Foster Co.*, 782 F.2d 1421 (7th Cir. 1986) (no age discrimination when reduction in force was based upon employee performance); *Sahadi v. Reynolds Chemical*, 636 F.2d 1116 (6th Cir.1980) (no age discrimination when employee's job was eliminated for economic reasons); *Price v. Maryland Cas. Co.*, 561 F.2d 609 (5th Cir. 1977) (no age discrimination when reduction in force was based upon employee performance).

This is not a case in which an older employee's higher income was coupled with other proof of age discrimination, such as employer comments, *Franci v. Avco Corp.*, 538 F.Supp. 250 (D.Conn.1982); *Schulz v. Hickok Mfg. Co.*, 358 F.Supp. 1208 (N.D. Ga.1973) ("youth movement"), or a pattern of discharge of older employees, *McCorstin v. United States Steel Corp.*, 621 F.2d 749 (5th Cir.1980), *reh. denied* 627 F.2d 239; *Cova v. Coca-Cola Bottling Co.*, 574 F.2d 958 (8th Cir.1978); *Carpenter v. Continental Trailways*, 446 F.Supp. 70 (E.D. Tenn.1978), or statistical evidence. *Polstorff v. Fletcher*, 452 F.Supp. 17 (N.D.Ala. 1978); *Schulz v. Hickok Mfg. Co.*, 358 F.Supp. 1208 (N.D.Ga.1973). Neither is this a case in which the decision to terminate was linked to the vesting of pension or other early retirement benefits. *E.E.O.C. v. Westinghouse Electric Corp.*, 725 F.2d 211 (3d Cir.1983); *Popko v. Clairton*, 570 F.Supp. 446 (W.D.Pa.1983); *Cleverly v. Western Electric Co.*, 450 F.Supp. 507 (W.D.Mo.1978); *Bishop v. Jelleff Associates*, 398 F.Supp. 579 (D.D.C.1974); *see also Christensen v. Equitable Life Assur.*

*Soc'y,* 767 F.2d 340, 344 (7th Cir.1985). In each of those circumstances, the combination of factors was deemed sufficient to violate the ADEA.

The case before the court is one in which Transit Mix terminated a single employee, Mr. Metz, without direct consideration of Mr. Metz's age. One of the two factors that motivated the termination bore a relationship to Mr. Metz's age, but that factor did not constitute a general company rule governing layoff or termination of employees. This distinction may seem self-evident because this is not a disparate impact case: Mr. Metz was the only employee terminated in the transaction of which he complains, and he complains of disparate treatment by his employer based on age.

In *Geller v. Markham,* 635 F.2d 1027 (2d Cir.1980), *cert. denied* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981), a school board's policy of hiring only those persons below a certain level of experience was found violative of the ADEA. The court rejected the use of the facially discriminatory policy as a "cost-cutting" measure, citing 29 C.F.R. § 860.103(h) (1979):

> a general assertion that the average cost of employing older workers as a group is higher than the average cost of employing younger workers as a group will not be recognized as a differentiation under the terms and provisions of the Act, unless one of the other statutory exceptions applies. To classify or group employees solely on the basis of age for the purpose of comparing costs, or for any other purpose, necessarily rests on the assumption that the age factor alone may be used to justify a differentiation—an assumption plainly contrary to the terms of the Act and the purpose of Congress in enacting it. Differentials so based would serve only to perpetuate and promote the very discrimination at which the Act is directed.

The court held that the plaintiff had shown herself entitled to recovery on theories of disparate impact and disparate treatment. The court also cited with approval *Marshall v. Arlene Knitwear, Inc.,* 454 F.Supp. 715 (E.D.N.Y.1978), but failed to note that the case was reversed in part without opinion. 608 F.2d 1369 (2d Cir. 1979).

In *Leftwich v. Harris-Stowe State College,* 702 F.2d 686 (8th Cir.1983), a disparate impact case, the court rejected a college faculty reorganization plan in which all professors were invited to re-apply for the faculty at the "new" college, but which limited the number of tenured faculty that would be considered for employment at the "new" college. Those professors not "rehired" were terminated. The defendants contended that the need to save costs warranted what amounted to a reduction of tenured faculty, but the court held that the nexus between tenure status and age compelled rejection of that justification:

> ... the plain intent and effect of the defendants' practice was to eliminate older workers who had built up, through years of satisfactory service, higher salaries than their younger counterparts. If the existence of such higher salaries can be used to justify discharging older employees, then the purpose of the ADEA will be defeated.

702 F.2d at 691.

In *E.E.O.C. v. Chrysler Corp.,* 733 F.2d 1183 (6th Cir., *op'n on reh'g* 738 F.2d 167 (1984), the court upheld the EEOC's contention that Chrysler's "cost-cutting" move of laying off those under 55 while involuntarily retiring those over 55 violated the ADEA. The court held that the economic necessity upon which Chrysler relied may have warranted layoffs, but did not warrant the disparate treatment based on age. Mr. Metz cites this case in support of his proposition that "Economic justifications or cost cutting measures are not reasonable factors other than age within the meaning of the ADEA." The *Chrysler* case provides little support, however, for the proposition that an employer cannot discharge its highest paid employee as a cost cutting measure; the case simply holds that an employer cannot, as part of a single cost-cutting program, lay off the younger employees while firing the older employees.

D

■ One treatise reports that, "The relatively higher cost of employing older workers as a group is generally rejected as an RFOA [reasonable factor other than age]. The cost of employing an older worker when considered on an individual basis, however, may constitute an RFOA." B. Schlei & P. Grossman, Employment Discrimination Law 506 (2d ed. 1983). In other words, the higher cost of the employee may be a permissible consideration when approaching a single personnel decision, although it would be impermissible as a basis for a general policy governing personnel decisions.

This view of the law is consistent with *Geller v. Markham*, 635 F.2d 1027 (2d Cir. 1980), *cert. denied* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981), and *Leftwich v. Harris-Stowe State College*, 702 F.2d 686 (8th Cir.1983), in which the employers had based their policies for hiring teachers on the higher cost of more experienced, or tenured, teachers. It is also consistent with *E.E.O.C. v. Chrysler Corp.*, 733 F.2d 1183 (6th Cir.), *op'n on reh'g* 738 F.2d 167 (1984), in which Chrysler had adopted a wholesale structure of layoffs and involuntary retirements governed by age and founded on the proposition that older employees cost more.

The court concludes that the rule as stated by Schlei and Grossman is an accurate statement of existing law.

IV

■ Based upon the foregoing, the court concludes that, although Transit Mix based the termination of Mr. Metz in part upon a factor that was not age-neutral, the circumstances of this case do not constitute a violation of the ADEA. Mr. Metz's termination was based upon two legitimate and, under the circumstances of this case, nondiscriminatory business reasons. The law is with the defendant.

Let judgment be entered for the defendant and against the plaintiff.

SO ORDERED.