**Wayne R. METZ, Plaintiff,**

v.

**TRANSIT MIX, INC., Defendant.**

**No. S85–354.**

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 23, 1988.

Ivan E. Bodensteiner, Valparaiso, Ind., for plaintiff.

Jere L. Humphrey, Plymouth, Ind., for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on the motion for entry of judgment filed by plaintiff Wayne Metz. This court previously entered judgment for defendant Transit Mix on Mr. Metz's claim of age discrimination, *Metz v. Transit Mix, Inc.*, 646 F.Supp. 286 (N.D.Ind.1986), but Mr. Metz prevailed on appeal to the Seventh Circuit, 828 F.2d 1202 (7th Cir.1987), which remanded for a determination of the appropriate relief. *Id.* at 1211. Mr. Metz's motion for entry of judgment presents several issues which the parties have briefed and argued. For the

reasons set forth below, the court hereby GRANTS IN PART Mr. Metz's motion in accord with the terms set forth herein, and concludes that judgment should be entered for Mr. Metz in the sum of $127,916.47. Because the two earlier reported opinions in this cause have fully canvassed the facts of this case, the court proceeds directly to a discussion of the disputed issues concerning relief.

## I. BACK PAY

### A. The Parties' Arguments

Mr. Metz requests back pay for the period from January, 1984 to August, 1987. During that period, Mr. Metz initially received unemployment compensation and later found employment with the Starke County Highway Department. He seeks to recover the difference between his former salary at Transit Mix and the amount of wages and unemployment compensation earned in mitigation. Detailed on an annual basis, the following figures reflect that difference:

> 1984 — $18,866.00
> 1985 — $14,521.00
> 1986 — $15,275.00
> 1987 — $15,836.00

Transit Mix objects to these calculations on two grounds:

1. Transit Mix argues that the relevant figures for comparison are not what Mr. Metz was earning before, but rather the earnings of Donald Burzloff, the forty-three year old assistant manager at the Plymouth plant who assumed Mr. Metz's duties as manager of the Knox plant. In support of this contention, Transit Mix cites the Seventh Circuit's statement that to have offered Mr. Metz continued employment at a lower salary would not have been discriminatory, see 828 F.2d at 1208; see also id. at 1213 (Easterbrook, J. dissenting), and Mr. Metz's testimony (at the hearing held on the motion for entry of judgment) that he would have accepted continued employment at Mr. Burzloff's rate of pay.

2. Transit Mix contends that the relevant period for assessing back pay should not include Mr. Metz's initial layoff from January to April, 1984, because it had no obligation to employ him at its Plymouth facility during the months in which the Knox plant was closed.

### B. Analysis

■ The court concludes that Mr. Metz's former salary provides the appropriate figure for calculation of his back pay. Although Transit Mix could have offered him a salary reduction to Mr. Burzloff's wage level without violating the ADEA, see 828 F.2d at 1210, it did not pursue that course. Moreover, for purposes of calculating back pay, the appropriate comparison is the position that the plaintiff would have occupied had no violation occurred, rather than a non-discriminatory alternative. See Kossman v. Calumet County, 800 F.2d 697 (7th Cir.1986), cert. denied — U.S. ——, 107 S.Ct. 1294, 94 L.Ed.2d 151 (1987). Accordingly, Transit Mix is not entitled to such a reduction in the amount of back pay awarded.

■ Transit Mix is entitled, however, to a calculation of back pay from April, 1984 onward rather than from January, 1984. As the court found at trial, when Transit Mix laid off Mr. Metz for the winter effective December 1, 1983, it had not yet decided whether to re-open the Knox plant in the spring. 828 F.2d at 1203; 646 F.Supp. at 289. The April, 1984 decisions to re-open the Knox plant, to select Mr. Burzloff to operate it, and to terminate Mr. Metz constituted the ADEA violation. 828 F.2d at 1203; see 646 F.Supp. at 289 (describing these decisions as "inseparable"). Accordingly, the figure submitted by Mr. Metz for 1984 back pay must be adjusted accordingly.[1] The following figures reflect the appropriate amount of back pay:

> 1984 — $13,601.00
> 1985 — $14,521.00
> 1986 — $15,275.00
> 1987 — $15,836.00

1. The 1984 backpay figure submitted by Mr. Metz must be recalculated on the basis of $9/12$ of his projected 1984 salary at Transit Mix, minus the total of his earnings at the Starke County Highway Department and unemployment compensation from June to December, 1984.

Mr. Metz further argues that the award of back pay should include the increased health insurance costs he incurred during the applicable back pay period. He obtained health insurance at an approximate cost of $100.00 per month. Such an award is within the court's discretion under the ADEA. *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 161 (7th Cir.1981). Because Mr. Metz actually purchased health insurance, the court concludes that the increased cost of health insurance should be included in the award of back pay. Accordingly, the total back pay amount listed above should be increased by $4,400.00.[2]

The parties disagree as to the appropriate interest rate to be applied to these back pay figures.[3] Mr. Metz argues that an annual 8% interest rate would be appropriate and has submitted corresponding calculations; Transit Mix argues that an annual 7.01% interest rate should be applied and also has submitted corresponding calculations. The court deems it appropriate to resolve this dispute by reference to the currently applicable rate for post-judgment interest under 28 U.S.C. § 1961, which is 7.95%. Because this figure more closely approximates the 8% annual interest rate proposed by Mr. Metz, the court adopts the 8% annual interest rate for the calculation of prejudgment interest.[4]

As applied to the above back pay figures, an annual 8% interest rate increases the

total backpay award to the following amounts:

| | |
|---|---|
| 1984 — | $18,504.00 |
| 1985 — | $18,292.00 |
| 1986 — | $17,817.00 |
| 1987 — | $17,103.00 |
| | $71,716.00 |
| + | 5,984.00[5] |
| Total | $77,700.00 |

## II. FRONT PAY

Under the ADEA, front pay is an appropriate remedy if liquidated damages have not been awarded and reinstatement is not feasible. *Coston v. Plitt Theatres*, 831 F.2d 1321, 1332–34 (7th Cir.1987), *cert. denied* — U.S. ——, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988); *McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 118 (7th Cir.1986), *cert. denied* — U.S. ——, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). Liquidated damages may be awarded for "willful" violations of the ADEA. *Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *Coston v. Plitt Theatres*, 831 F.2d at 1327.

The circumstances of Mr. Metz's discharge do not indicate that the violation of the ADEA was willful. The feasibility of reinstatement, therefore, is the relevant issue. Transit Mix argues that reinstatement would be inappropriate here. Accordingly, Mr. Metz argues that an award of front pay is appropriate in this case, and the court agrees.[6]

---

**2.** Forty-four months from April, 1984 to December, 1987 at $100.00 per month.

**3.** Although Transit Mix notes that it would not be an abuse of discretion to deny Mr. Metz's request for an award of prejudgment interest, the court determines, in the exercise of its discretion, that such an award is appropriate in this case.

**4.** This interest rate also applies to the life insurance policy discussed *infra* at 991.

**5.** This calculation is based on the $4,400.00 increased cost of health insurance plus $1,584.00 in prejudgment interest. The latter figure represents a proportional reduction (to reflect a forty-four month rather than a forty-eight month period) of the interest calculation submitted by the plaintiff's expert. Although the court acknowledges that such a calculation may only

approximate the actual amount of interest at 8% over forty-four months, the absence of an expert available to assist the court necessitates such an approximation.

**6.** Although Transit Mix suggests that the court should exercise its discretion to deny the request for front pay because the Knox plant is a marginal operation in terms of profitability, *see McNeil v. Economics Laboratory, Inc.*, 800 F.2d at 119, the record does not conclusively support such a finding. The Knox plant re-opened in April, 1984 and the Starke County construction industry had begun to improve during 1983 and 1984; the record before the court does not indicate any subsequent economic developments or financial difficulties that threaten the Knox plant's continued operation.

As to the amount of front pay, Mr. Metz submits that he intended to retire in mid–1994, 6.5 years past 1987. In contrast to the backpay issue, Mr. Metz concedes that the appropriate salary for comparison is Mr. Burzloff's wage rate, and he submits the following figures as the appropriate calculation:

| $ 7,500.00 | Annual Difference |
| × 6.5 | Number of Years |
| $48,750.00 | Total |

$38,324.00  Total, Reduced to Present Value

With the exception of the arguments noted above, Transit Mix has not expressed disagreement with the front pay figures submitted by Mr. Metz. Accordingly, the court finds that $38,324.00 is a proper element of the award of front pay.

Mr. Metz also argues that the award of front pay should reflect the increased cost of health insurance he will face during the relevant period. He projects this cost at $7,800.00, which is $6,132.00 when reduced to present value. In the exercise of its discretion, the court concludes that such an award is appropriate here. Accordingly, the total amount of front pay, reduced to present value, should be $38,324.00 plus $6,132.00, or $44,456.00.

### III. LIFE INSURANCE POLICY

■ Mr. Metz argues that he also should recover the value of a life insurance policy that Transit Mix redeemed for its cash value following his discharge. The cash surrender receipt listed Mr. Metz as the named insured. *See* Plaintiff's Exhibits 1 and 2. After Transit Mix, through its president, informed Mr. Metz that the policy belonged to him, he paid income taxes on the dividends and interest earned in 1983. 646 F.Supp. at 290.

Transit Mix contends that the evidence established its ownership of the policy and that Mr. Metz would not have owned the policy even had he continued his employment; however, Transit Mix does not specify the evidence that would support such a finding. It further contends that Mr. Metz's payment of taxes on the dividends and interest was a result of misapprehension concerning tax liability rather than ownership and suggests that reimbursement of the taxes paid would be the appropriate remedy.

■ Based on Mr. Lawrence's statement to Mr. Metz in 1983 concerning the ownership of the policy, 646 F.Supp. at 290, the court concludes that Mr. Metz should receive the cash surrender value of the policy plus prejudgment interest. Despite ample opportunity at trial and at the hearing on the motion for entry of judgment, Transit Mix has submitted no evidence to indicate that Mr. Lawrence's 1983 statement inaccurately attributed ownership to Mr. Metz. Accordingly, in its discretion, the court awards Mr. Metz the $4,236.47 cash surrender value and $1,524.00 in prejudgment interest.

### IV. CONCLUSION

In accord with the above discussion, the court hereby GRANTS IN PART the plaintiff's request for relief in the following amounts:

| $ 77,700.00 — | Back Pay Plus Interest |
| 44,456.00 — | Front Pay, Reduced to Present Value |
| 5,760.47 — | Cash Surrender Value of Insurance Policy, Plus Interest |
| $127,916.47 | Total Amount of Judgment |

SO ORDERED.